LATTICE CURL AND WIFE, EVELYN CURL, LEWIS BOGER AND WIFE, KATHY BOGER, PLAINTIFFS v. AMERICAN MULTIMEDIA, INC., AMI, A.M.I., INC., AMERICAN MEDIA INTERNATIONAL, LLC, AMERICAN MEDIA INTERNATIONAL, LTD., BURLINGTON PROPERTY, LLC, BILL AND PEGGY BRITT LIMITED PARTNERSHIP, BILLY B. BRITT, PEGGY G. BRITT, DEFENDANTS

EARL G. BROWN, EMMA L. BROWN, RICHARD B. EVANS, PEGGY F. EVANS, CATHERINE ANN EVANS, RICHARD TIM EVANS, CLARENCE FARRELL, KATHRYN FARRELL, ROBERT POWELL, SR. AND RUTH MAXINE POWELL, PLAINTIFFS v. AMERICAN MULTIMEDIA, INC., AMI, A.M.I., INC., AMERICAN MEDIA INTERNATIONAL, LLC, AMERICAN MEDIA INTERNATIONAL, LTD., BURLINGTON PROPERTY, LLC, BILL LIMITED PARTNERSHIP, BILLY B. BRITT, PEGGY G. BRITT, DEFENDANTS

No. COA07-444

(Filed 18 December 2007)

**1. Appeal and Error— motion to amend record—motion to dismiss based on appellate rules violations**

Defendants' first motion to amend the record in order to add the affidavit of a geologist who worked with defendants is granted, and defendants' second motion to dismiss plaintiffs' appeal for violation of the Rules of Appellate Procedure in a case seeking damages for the contamination of plaintiffs' wells with certain toxic chemicals is denied.

**2. Appeal and Error— appealability—interlocutory order—grant of partial summary judgment—dismissal of remaining claims without prejudice makes a final order**

Defendants' motion seeking dismissal of plaintiffs' appeal in a case seeking damages for the contamination of plaintiffs' wells with certain toxic chemicals on the basis that it is from an interlocutory order is denied because: (1) plaintiffs voluntarily dismissed without prejudice their remaining claims for property damage against defendants under N.C.G.S. § 1A-1, Rule 41 after the entry of partial summary judgment, thus making the trial court's grant of partial summary judgment a final order; and (2) although defendants contend *Hill v. West*, 177 N.C. App. 132 (2006), compels dismissal in the instant case, inasmuch as the holding in *Hill* was apparently based in part on appellants' manipulative behavior and failure to follow the Rules of Appellate Procedure, *Hill's* holding is restricted to the facts of that case.

CURL v. AMERICAN MULTIMEDIA, INC.

[187 N.C. App. 649 (2007)]

**3. Oil and Gas— toxic contamination of wells—personal injury claims—new causes of action—partial summary judgment**

The trial court did not err in an action seeking damages for the contamination of plaintiffs' wells with toxic chemicals by entering partial summary judgment in favor of defendants on plaintiffs' personal injury claims for monetary damages under the strict liability provision of the Oil Pollution and Hazardous Substance Control Act set forth in N.C.G.S. § 143-215.93 based upon loss of chance of continued health/increased risk of serious disease, right not to be compelled to undergo heightened medical monotoring, and instilling fear of cancer or other deadly disease because: (1) none of the three claims proposed by plaintiff under the strict liability statute were asserted in their complaint; (2) plaintiffs have no recognized present injury ; and (3) recognition of a new cause of action is a policy decision within the province of the legislature.

**4. Emotional Distress— intentional infliction—toxic chemicals in wells—absence of evidence of mental condition**

Plaintiffs failed to produce evidence that they had suffered from or had been diagnosed with or treated for any "severe and disabling emotional or mental condition" required to establish the severe emotional distress element of a claim for the intentional infliction of emotional distress from the alleged contamination by defendants of their wells with toxic chemicals.

Appeal by Plaintiffs from judgment entered 15 January 2007 by Judge W. Osmond Smith, III, in Alamance County Superior Court. Heard in the Court of Appeals 31 October 2007.

*Pulley, Watson, King & Lischer, P.A., by Guy W. Crabtree, Mark E. Fogel and Richard N. Watson; and Hopf & Higley, P.A., by James F. Hopf and Donald S. Higley, II, for Plaintiff-Appellants.*

*Brooks, Pierce, McLendon, Humphrey & Leonard, L.L.P., by Robert J. King III, and Alexander Elkan; and Northern Blue, LLP, by J. William Blue, Jr., for Defendant-Appellees.*

ARROWOOD, Judge.

This appeal arises from a lawsuit seeking damages for the contamination of Plaintiffs' wells with certain toxic chemicals. Plaintiffs appeal from entry of partial summary judgment. We affirm.

CURL v. AMERICAN MULTIMEDIA, INC.

[187 N.C. App. 649 (2007)]

The Plaintiffs are individuals who are current or former residents of Hahn Road, in Burlington, North Carolina. Defendants are individuals and corporations with a present or former interest in property located near Hahn Road. Defendants' property has had soil and groundwater contamination with chlorinated solvents, including trichloroethene ("TCE") and tetrachloroethene ("PCE"), both of which are harmful to the human body. TCE and PCE contamination has also occurred in Plaintiffs' wells.

In March 2003 Plaintiffs filed suit against Defendants, alleging that Defendants were liable for contamination of their wells and asserting claims of negligence, negligence *per se*, strict liability under N.C. Gen. Stat. § 143-215.93, nuisance, trespass, and *res ipsa loquitor*. Based on these claims, Plaintiffs sought damages for medical expenses, pain and suffering, the increased likelihood of future disease, the cost of medical monitoring that was recommended as a result of Plaintiffs' increased risk of disease, their fear of future disease and diminished quality of life, the cost of remediation to their properties, the diminution in the value of their properties, and the cost of alternative water supplies.

On 11 December 2006 the trial court granted Defendants' motion for partial summary judgment, and dismissed all claims against Defendants David J. Forsyth and Jerry C. Jones, Jr., who are not parties to this appeal. In an order entered 15 January 2007, the trial court dismissed Plaintiffs' personal injury claims for monetary damages for medical expenses, medical monitoring, pain and suffering, diminished quality of life, the increased chances that Plaintiffs would contract serious illness, and claims based on allegations of psychic or emotional injury. The trial court denied Defendants' motion for entry of summary judgment on Plaintiffs' claims for property damages, including their claims of negligence, negligence *per se*, nuisance, trespass, *res ipsa loquitor*, and strict liability to the extent that they sought damages for diminution of property value, costs of remediation, costs of obtaining alternative water supplies, and other property damage. From this order, Plaintiffs have appealed.

## Standard of Review

[1] Preliminarily, we note that Defendants have filed several appellate motions. The first of these, Defendants' motion to amend the record in order to add the affidavit of Walter Beckwith, a geologist who worked with Defendants, is hereby granted. The second motion,

CURL v. AMERICAN MULTIMEDIA, INC.

[187 N.C. App. 649 (2007)]

seeking dismissal of Plaintiffs' appeal for violation of the Rules of Appellate Procedure, is denied.

**[2]** Defendants' third motion, seeking dismissal of Plaintiffs' appeal as interlocutory, is also denied. "A judgment is either interlocutory or the final determination of the rights of the parties." N.C. Gen. Stat. § 1A-1, Rule 54(a) (2005). "An interlocutory order is one made during the pendency of an action, which does not dispose of the case, but leaves it for further action by the trial court in order to settle and determine the entire controversy." *Veazey v. Durham*, 231 N.C. 357, 362, 57 S.E.2d 377, 381 (1950).

In the instant case, the trial court entered an order of partial summary judgment, leaving Plaintiffs' claims for property damage still pending. "A grant of partial summary judgment, because it does not completely dispose of the case, is an interlocutory order from which there is ordinarily no right of appeal." *Liggett Group v. Sunas*, 113 N.C. App. 19, 23, 437 S.E.2d 674, 677 (1993). However, after the entry of partial summary judgment, Plaintiffs dismissed their remaining claims against Defendants, pursuant to N.C. Gen. Stat. § 1A-1, Rule 41 (2005). N.C. Gen. Stat. §1A-1, Rule 41(a)(1) (2005) provides in pertinent part that:

> [A]n action or any claim therein may be dismissed by the plaintiff . . . by filing a notice of dismissal at any time before the plaintiff rests his case[.] . . . Unless otherwise stated . . . the dismissal is without prejudice[.] . . . [and] a new action based on the same claim may be commenced within one year after such dismissal[.] . . .

All the Plaintiffs dismissed their remaining claims; some did so without prejudice and others entered dismissals with prejudice. After entry of voluntary dismissal there was nothing further that the trial court could do in the case, although certain Plaintiffs retained the right to refile their claims within a year of entering dismissal. We find *Combs & Assocs. v. Kennedy*, 147 N.C. App. 362, 555 S.E.2d 634, (2001), to be instructive in this situation. In *Combs*, as in the instant case, the plaintiff took a voluntary dismissal without prejudice of its remaining claim. The Court held:

> Ordinarily, an appeal from an order granting summary judgment to fewer than all of a plaintiff's claim is premature and subject to dismissal. However, since the plaintiff here voluntarily dismissed the claim which survived summary judgment, any rationale for

dismissing the appeal fails. Plaintiff's voluntary dismissal of this remaining claim does not make the appeal premature but rather has the effect of making the trial court's grant of partial summary judgment a final order.

*Id.* at 367, 555 S.E.2d at 638. Citing several other cases, the *Combs* Court noted further that its holding:

> comports with the procedural posture of appeals this Court has initially dismissed as being interlocutory and then subsequently heard on appeal following voluntary dismissals. In *Whitford v. Gaskill,* 119 N.C. App. 790, 460 S.E.2d 346 (1995), . . . the trial court granted partial summary judgment in plaintiff's favor. The defendant appealed and this Court dismissed the appeal as interlocutory[.] . . . [P]laintiff voluntarily dismissed her claim for damages. This Court then allowed the defendant's renewed appeal of the trial court's summary judgment order. Similarly, in *Berkeley Federal Savings Bank v. Terra Del Sol, Inc.,* 119 N.C. App. 249, 457 S.E.2d 736 (1995), *disc. rev. denied,* 342 N.C. 639, 466 S.E.2d 276 (1996), the trial court granted the plaintiff [partial] summary judgment[.] . . . This Court initially dismissed defendants' appeal as interlocutory, only to allow the appeal following plaintiff's voluntary dismissal of its remaining claims.

*Id.* at 367-68, 555 S.E.2d at 639. We agree with the Court in *Combs* that our holding on this issue is in accord with precedent. Additionally in *Brown v. Woodrun Ass'n,* 157 N.C. App. 121, 577 S.E.2d 708 (2003), this Court ruled on an appeal in which:

> [The] Superior Court . . . granted partial summary judgment in favor of plaintiffs on all issues other than damages. . . . [D]efendant appealed to this Court. We remanded the case to the lower court as interlocutory and not appealable because there were remaining factual issues to decide. . . . [P]laintiffs voluntarily dismissed their damages claim without prejudice[.] . . . Thereafter, defendant gave notice of appeal to this Court[.]

*Id.* at 123-24, 577 S.E.2d at 710; *see also, e.g., Rouse v. Pitt County Memorial Hospital,* 343 N.C. 186, 470 S.E.2d 44 (1996) (appeal of partial summary judgment dismissed as interlocutory by this Court, which subsequently hears appeal after plaintiff takes voluntary dismissals, both with and without prejudice, of remaining claims). We conclude that, following the dismissal of Plaintiffs' remaining claims, their appeal was no longer interlocutory.

Defendants, however, ask us to dismiss Plaintiffs' appeal as interlocutory, based on the holding in a recent case, *Hill v. West*, 177 N.C. App. 132, 627 S.E.2d 662 (2006). In *Hill*, following dismissal of plaintiffs' appeal from partial summary judgment as interlocutory, appellants took a voluntary dismissal without prejudice of their remaining claims against defendants. Plaintiffs then filed a second appeal, which this Court dismissed. Defendants herein argue that *Hill* compels dismissal in the instant case. We note, however, that *Hill* did not attempt to distinguish its holding from the significant body of case law holding *contra*. Moreover, the Court in *Hill* stated <u>several</u> reasons for the dismissal, including plaintiffs' repeated failure to comply with the North Carolina Rules of Appellate Procedure, and the Court's perception that the appellants were "manipulating the Rules of Civil Procedure in an attempt to appeal the 2003 summary judgment that otherwise would not be appealable." *Id.* at 135, 627 S.E.2d at 665. Inasmuch as the holding in *Hill* was apparently based in part on the appellants' "manipulative" behavior and failure to follow the Rules of Appellate Procedure, we conclude that *Hill's* holding is restricted to the facts of that case. Defendants' motion is denied.

Summary judgment is properly entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2005). Further:

> The purpose of [summary judgment] is to avoid a formal trial where only questions of law remain and where an unmistakable weakness in a party's claim or defense exists. This Court has . . . instructed that "an issue is genuine if it is supported by substantial evidence," which is that amount of relevant evidence necessary to persuade a reasonable mind to accept a conclusion[.] . . . "[A]n issue is material if the facts alleged would constitute a legal defense, or would affect the result of the action, or if its resolution would prevent the party against whom it is resolved from prevailing in the action."

*Liberty Mut. Ins. Co. v. Pennington*, 356 N.C. 571, 579, 573 S.E.2d 118, 123-24 (2002) (quoting *DeWitt v. Eveready Battery Co.*, 355 N.C. 672, 681, 565 S.E.2d 140, 146 (2002); and *Koontz v. City of Winston-Salem*, 280 N.C. 513, 518, 186 S.E.2d 897, 901 (1972)) (citations omitted).

CURL v. AMERICAN MULTIMEDIA, INC.

[187 N.C. App. 649 (2007)]

"On appeal of a trial court's allowance of a motion for summary judgment, we consider whether, on the basis of materials supplied to the trial court, there was a genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. Evidence presented by the parties is viewed in the light most favorable to the non-movant." *Summey v. Barker*, 357 N.C. 492, 496, 586 S.E.2d 247, 249 (2003) (citing *Dobson v. Harris*, 352 N.C. 77, 83, 530 S.E.2d 829, 835 (2000)).

---

[3] Plaintiffs argue that the trial court erred as a matter of law by granting summary judgment for Defendants on Plaintiffs' personal injury claims. Plaintiffs have not identified factual disputes, but instead argue that summary judgment was improper as a matter of law. We disagree.

Plaintiffs first discuss the relationship between their claims and the Oil Pollution and Hazardous Substances Control Act ("OPHSCA"), N.C. Gen. Stat. § 143-215.75 (2005) *et seq.* N.C. Gen. Stat. § 143-215.93 (2005) provides in pertinent part: "Any person having control over oil or other hazardous substances which enters the waters of the State in violation of this Part shall be strictly liable, without regard to fault, for damages to persons or property, public or private, caused by such entry[.]" On the basis of § 143-215.93, Plaintiffs "ask the Court to enforce the plain language of OPHSCA and apply its strict liability standard to personal injury claims."

Plaintiffs are correct that the cited statute imposes strict liability for personal and property damage on violators of OPHSCA. However, the standard of liability assumes relevance only in the context of a valid claim of personal injury. In that regard, Plaintiffs ask this Court to

recognize in toxic contamination cases at least these three causes of action, all of which are firmly rooted in traditional tort law: (1) infliction of a loss of chance of continued health/increased risk of serious disease; (2) an invasion of personal autonomy, specifically of the right not to be compelled to undergo heightened medical monitoring for the remainder of their lives; and (3) the instilling of fear of cancer or other deadly disease.

We are sympathetic to Plaintiffs' situation. Although none of the Plaintiffs is presently diagnosed with an illness caused by exposure to TCE or PCE, there is evidence that their exposure to these chemicals increased their future risk of serious illnesses, including certain can-

cers. These claims are not totally novel; Plaintiffs in many jurisdictions have raised similar claims. *See, e.g.*, 32 Wm. Mitchell L. Rev. 1095 (2006), NOTE: A FIFTY-STATE SURVEY OF MEDICAL MONITORING AND THE APPROACH THE MINNESOTA SUPREME COURT SHOULD TAKE WHEN CONFRONTED WITH THE ISSUE. However, for several reasons, we elect not to create these new causes of action.

Firstly, none of the three causes of action proposed by Plaintiffs were asserted in their complaint, which sought damages only for negligence; negligence *per se*; statutory strict liability; nuisance; trespass; and *res ipsa loquitur*. "This Court has long held that issues and theories of a case not raised below will not be considered on appeal[.]" *Westminster Homes, Inc. v. Town of Cary Zoning Bd. of Adjust.*, 354 N.C. 298, 309, 554 S.E.2d 634, 641 (2001) (citing *Smith v. Bonney*, 215 N.C. 183, 184-85, 1 S.E.2d 371, 371-72 (1939); *Weil v. Herring*, 207 N.C. 6, 10, 175 S.E. 836, 838 (1934)). "Because the pertinent allegations have not been withdrawn or amended, the pleadings have a binding effect as to the underlying theory of plaintiff's [] claim." *Anderson v. Assimos*, 356 N.C. 415, 417, 572 S.E.2d 101, 102 (2002).

Moreover, the "recognition of a new cause of action is a policy decision which falls within the province of the legislature. 'The excelsior cry for a better system in order to keep step with the new conditions and spirit of a more progressive age must be made to the Legislature, rather than to the courts.' " *Ipock v. Gilmore*, 85 N.C. App. 70, 73, 354 S.E.2d 315, 317 (1987) (quoting *Henson v. Thomas*, 231 N.C. 173, 176, 56 S.E.2d 432, 434 (1949)).

For example, consider Plaintiffs' argument that the "policy objectives of OPHSCA compel the recognition of 'increased risk of disease' as a present injury." Sound policy reasons might be advanced either in favor of or opposition to the creation of this cause of action, and if such a claim <u>were</u> recognized, other policy questions would arise. The questions would include the following inquiries: What statistical chance of future illness or percent increase in that likelihood would trigger the cause of action? Would secondary causes of increased risk, such as cigarette smoking, preclude recovery? Would plaintiffs be required to demonstrate present physical effects, such as decreased immune function or increased cellular concentration of a toxin? Similar questions would arise upon recognition of the costs of future medical monitoring as a basis for damages. Would Defendants be liable for the costs of all "medically recommended" monitoring, or would Plaintiffs have to meet some other standard?

CURL v. AMERICAN MULTIMEDIA, INC.

[187 N.C. App. 649 (2007)]

The cases cited by Plaintiffs in support of these damages all involve future damages claimed in connection with a recognized present injury. However, these cases do not address or support a freestanding claim for future medical expenses in the absence of a present injury.

Clearly, recognition of the increased risk of disease as a present injury, or of the cost of medical monitoring as an element of damages, will present complex policy questions. We conclude that balancing the humanitarian, environmental, and economic factors implicated by these issues is a task within the purview of the legislature and not the courts. Accordingly, we decline to create the new causes of action or type of damages urged by Plaintiffs.

[4] Regarding Plaintiffs' claims for their increased fears and anxiety, our common law has long recognized claims for negligent and intentional infliction of emotional distress. We again note that Plaintiffs failed to bring claims for either of these. Further, Plaintiffs failed to produce evidence to support these claims.

"The essential elements of a claim for intentional infliction of emotional distress are '(1) extreme and outrageous conduct by the defendant (2) which is intended to and does in fact cause (3) severe emotional distress.' " *Holloway v. Wachovia Bank and Trust Co.*, 339 N.C. 338, 351, 452 S.E.2d 233, 240 (1994) (quoting *Dickens v. Puryear*, 302 N.C. 437, 452, 276 S.E.2d 325, 335 (1981)). "In this context, the term 'severe emotional distress' means any emotional or mental disorder, such as, for example, neurosis, psychosis, chronic depression, phobia, or any other type of severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so." *Johnson v. Ruark Obstetrics*, 327 N.C. 283, 304, 395 S.E.2d 85, 97 (1990) (citations omitted).

None of the North Carolina cases cited by Plaintiffs suggest that a different standard might be applicable. Rather, Plaintiffs have cited cases that address issues other than the existence of severe emotional distress, wherein the presence of either a physical injury or severe emotional injury had been established. Nor are we persuaded by Plaintiffs' citations from other jurisdictions that the element of severe emotional distress is "unnecessary in toxic exposure cases[.]"

Plaintiffs produced no evidence that any Plaintiff had suffered from or was diagnosed with or treated for a "severe and disabling emotional or mental condition." We conclude that the trial court did

not err by granting summary judgment on their claims for damages for their emotional distress.

Finally, Plaintiffs argue that the trial court committed "an error of law" by granting summary judgment of Plaintiffs' claims for personal injuries associated with their claims of trespass and nuisance. As discussed above, we have concluded that Plaintiffs failed to forecast evidence of any type of personal injury that has been recognized as compensable in North Carolina.

We conclude that the trial court did not err and that its order of partial summary judgment for Defendants should be

Affirmed.

Judges CALABRIA and STEPHENS concur.